# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

FRANKLIN L. GRAMMER, JR.,

    *Petitioner,*

vs.

Case No. 16-3170-EFM

M. SAUERS, et al.,

    *Respondents.*

## MEMORANDUM AND ORDER

In 2010, Petitioner Franklin L. Grammer, Jr. was convicted, upon a plea of guilty, of one count of second degree murder in violation of K.S.A. § 21-3402(a), and upon a plea of no-contest, of one count of attempted first degree murder in violation of K.S.A. § 21-3401 and § 21-3301. He was sentenced to 274 months incarceration and is currently incarcerated at the Ellsworth Correctional Facility in Ellsworth, Kansas.

Petitioner petitions this Court to issue a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). He argues that there was an insufficient factual basis for his conviction of attempted first degree murder. In addition, he asserts that his counsel was ineffective on direct appeal for not raising the issue that his conviction for attempted first degree murder was not factually supported. Having reviewed the record, the Court denies Petitioner's petition for a writ of habeas corpus.

# I. Factual and Procedural Background

Petitioner pled guilty to one count of second degree murder for killing Betty Jo Grammer and pled no contest to one count of attempted first degree murder for attempting to kill Sam Shanks. The factual basis for the plea, as stated during Petitioner's plea hearing, and as stated by the Kansas Court of Appeals is as follows:

> I'm going to ask the Court to also consider the testimony of the preliminary hearing as part of [the basis for the guilty and no contest plea]. In addition to those facts, the State would have presented on June 8, that Betty Grammer, Sam Shanks and Jeff Robinson were working on painting a house at 6247 Glenfield in Fairway, Johnson County, Kansas.
> There had been previous or ongoing disagreements between … Grammer, and his wife, Betty [Jo] Grammer. On that morning, he showed up, after parking his vehicle a distance away from the job site, walked up to Betty [Jo] Grammer, put her in a headlock, applied a gun to her head and shot her once. She immediately fell onto the ground and later died of those injuries.
> While [Grammer] was committing this murder, Sam Shanks was on the roof of the house. He heard a disturbance, went over to the edge of the roof, looked down to witness [Grammer] shooting Betty [Jo] Grammer in the head. Sam Shanks will indicate that he immediately became concerned because he had just witnessed the murder that he would be next and, in fact, jumped off the roof to run away.
> The evidence will indicate that after [Grammer] shot his wife, Betty [Jo] Grammer, in the head, that he then walked across the front of the house, still holding the firearm in a ready position. Jami[e] and Pete Hyde, who were the owners of the house which was being painted, observed him walking across the front of the house holding the handgun in ready position as if he was looking for other people. Jami[e] would indicate that it looked as though Mr. Grammer was looking for and pursuing the other painters that had been working on the house and felt that he was pursuing them to also do harm to them based on his demeanor. She, in fact, told the 911 operators those facts.

> Both individuals, Sam Shanks and Jeff Robinson ran away from the scene. Sam Shanks was able to run and hide away from Mr. Grammer to prevent him from locating him. Mr. Grammer then left the residence and got in his car and drove away, later to be apprehended in California by law enforcement authorities and taken into custody. In his possession at the time of being taken in was a .22 caliber firearm. That firearm was consistent with the one witnessed by the eye witnesses as the one used to kill Betty [Jo] Grammer and was displayed as he was walking away from the site.
>
> Both eye witnesses, Sam Shanks and Jeff Robinson, would indicate that … Grammer, was the individual who shot, Betty Jo Grammer, and then walked across the front of the residence. The homeowners of 6247 Glenfield would also indicate that, based on their prior contact with … Grammer, they both identified him as the individual that walked across the front of the yard and chased the other painters.
>
> The State would submit as regards Count II, there was sufficient evidence that Mr. Grammer was looking for the other painters, including Sam Shanks, that he was armed with a firearm after shooting Betty Jo Grammer, a sufficient fact basis for attempted first degree murder charge in Count II.[1]

At Petitioner's sentencing, he requested a downward departure. The district judge denied his request, and Petitioner was sentenced to 274 months imprisonment. Petitioner appealed his sentence. The Kansas Supreme Court summarily affirmed his sentence after finding that it was without jurisdiction to consider the issue because his sentence was within the presumptive sentencing range.[2]

Petitioner then filed a motion for post-conviction relief pursuant to K.S.A. § 60-1507. With regard to this motion, Petitioner claimed that (1) there was an insufficient factual basis to support his conviction for attempted first degree murder, and (2) his appellate counsel was ineffective

---

[1] *Grammer v. Kansas*, 2015 WL 5036829, at *2-3 (Kan. Ct. App. 2015).

[2] *Kansas v. Grammer*, 2011 WL 3558314 (Kan. Aug. 2011).

because counsel failed to raise the insufficient factual basis as an issue during his direct appeal. The district court held an evidentiary hearing and denied Petitioner's § 60-1507 motion. The Kansas Court of Appeals affirmed the district court's decision, and the Kansas Supreme Court denied review.

In August of 2016, Petitioner filed his petition for habeas relief pursuant to 28 U.S.C. § 2254 in this Court. He claims that there was an insufficient factual basis for his conviction of attempted first degree murder and that his counsel was ineffective on direct appeal for not raising the issue that his conviction for attempted first degree murder was not factually supported.

## II. Legal Standard

The Court's consideration of a state prisoner's collateral attacks on state criminal proceedings is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which "requires federal courts to give significant deference to state court decisions."[3] The Court can only grant relief to a petitioner's claim that has been decided on the merits in state court if the state decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]

A state court decision is contrary to Supreme Court precedent when: (1) "the state court applies a rule that contradicts the governing law set forth in [a United States Supreme Court case]" or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different from

---

[3] *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013).

[4] 28 U.S.C. § 2254(d)(1) & (2); *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

-4-

[Supreme Court] precedent."[5] A state court's decision is an unreasonable application of Supreme Court precedent if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."[6] Thus, this Court may not issue a writ of habeas corpus simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."[7]

### III. Analysis

**A. Factual Basis for Attempted First Degree Murder Conviction**

Petitioner first claims that his no contest plea to attempted first degree murder is unconstitutional because there was no factual basis to support this charge against him. The state asserts that Petitioner's claim fails both factually and as a matter of law. This Court agrees.

As to the factual basis, a review of the plea hearing demonstrates that sufficient facts were set forth to support the factual basis for attempted first degree murder. As noted above, the prosecutor stated on the record that Petitioner's wife had been on the premises of a house with two other individuals because they were painting the house. The prosecutor also recounted that after Petitioner shot his wife in the head, he walked across the yard with the firearm in a "ready position." Several witnesses observed Petitioner's actions and noted that it appeared as though Petitioner were "pursuing the other painters that had been working on the house." Indeed, the Kansas Court of Appeals noted that after reviewing the record, "the proffer made by the State

---

[5] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

[6] *Williams*, 529 U.S. at 413.

[7] *Id.* at 411.

clearly and sufficiently supported a factual basis for [Petitioner's] plea of no-contest to attempted first-degree murder with Shanks as the victim."[8] The Kansas Court of Appeals also noted that the district court took extra time with Petitioner to ensure that he knew the facts related to his plea of no contest to attempted first degree of murder of Shanks.[9] Thus, this Court finds that the Kansas Court of Appeals' decision was a reasonable determination based on the facts set forth and a sufficient factual basis was set forth.

The state also claims that Petitioner's claim fails legally. As stated by the Tenth Circuit, "[a]lthough guilty pleas generally must have a factual basis under federal or state law, courts are constitutionally required to establish the factual basis of the plea *only if* the defendant claims factual innocence when he pleads guilty."[10] In this case, Petitioner did not claim factual innocence when he pled no contest to attempted first degree murder and guilty to second degree murder. In fact, during his plea proceeding, Petitioner agreed with the factual basis as it was set forth for both counts. Because he did not assert factual innocence during his plea, he cannot state a constitutional violation.[11] Accordingly, Petitioner's claim that his conviction for attempted first degree murder is unconstitutional fails.

**B.      Ineffective Assistance of Counsel**

Petitioner next claims that his constitutional rights were violated because he received ineffective assistance of counsel on appeal. He asserts that his counsel was deficient on direct

---

[8] *Grammer*, 2015 WL 5036829, at *7.

[9] *Id*. at *8.

[10] *Washington v. Workman*, 376 F. App'x 823, 825 (10th Cir. 2010) (emphasis added).

[11] *Id.*

appeal because his counsel did not challenge the sufficiency of the factual basis for the attempted first degree murder conviction.

Ineffective assistance of counsel claims are governed by the familiar standard in *Strickland v. Washington*.[12] First, Petitioner must show that his attorney's performance "fell below an objective standard of reasonableness."[13] Second, he must demonstrate that counsel's deficient performance actually prejudiced his defense.[14] "There is a strong presumption that counsel's performance falls within the wide range of professional assistance; the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."[15]

In its opinion, the Kansas Court of Appeals set forth the applicable standard from *Strickland* for evaluating ineffective assistance of counsel claims.[16] In evaluating Petitioner's contention, the court first noted that "[t]he failure of appellate counsel to raise an issue on appeal is not, per se, ineffective assistance of counsel."[17] The court then noted that appellate courts lack jurisdiction to hear challenges to the factual bases of pleas when a defendant does not file a motion to withdraw the plea.[18] Here, Petitioner did not file a motion to withdraw his plea. Thus, the Kansas Court of Appeals found:

---

[12] 466 U.S. 668 (1984).

[13] *Boyle v. McKune*, 544 F.3d 1132, 1137 (10th Cir. 2008) (citing *Strickland*, 466 U.S. at 688, 694).

[14] *Id.*

[15] *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quotation marks and citation omitted).

[16] *Grammer*, 2015 WL 5036829, at *6.

[17] *Id.* (citation omitted).

[18] *Id.*

> [H]ad appellate counsel attempted to challenge the factual basis for [Petitioner's] no contest plea, the appellate court would have dismissed this issue for lack of jurisdiction due to [Petitioner's] failure to file a motion to withdraw his plea prior to filing a direct appeal. Thus, there is no support for [Petitioner's] ineffective assistance of appellate counsel claim when there was no motion to withdraw his plea considered by the district court.[19]

The Kansas Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law. Indeed, it was consistent with federal law. As noted by the Tenth Circuit, "[i]f the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance."[20] In this case, Petitioner's counsel's decision to not raise a meritless issue was not prejudicial and thus not ineffective, and the Kansas Court of Appeals found appropriately. Accordingly, Petitioner's claim that his counsel was ineffective also fails.

### IV. Evidentiary Hearing and Certificate of Appealability

Petitioner requested an evidentiary hearing. This Court has the state records and has reviewed those records. "[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record."[21] In this case, an evidentiary hearing is not necessary because Petitioner's claims can be resolved on the state records.

Rule 11 of the Rules Governing Section 2254 Cases requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Without such a certificate, a petitioner may not appeal the denial of his or her habeas petition. But, "[i]f the

---

[19] *Id.*

[20] *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006).

[21] *Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (citing *Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003)).

court denies a certificate, the [petitioner] may . . . seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."[22]

Under 28 U.S.C. § 2253(c)(2)-(3), the Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court "indicate[s] which specific issue or issues satisf[ies] [that] showing." A petitioner can satisfy this standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that the issues presented in the petition are "adequate to deserve encouragement to proceed further."[23]

Here, the Court concludes that it should not issue a certificate of appealability. Nothing suggests that the Court's rulings in this case are debatable or incorrect, and no record authority suggests that the Tenth Circuit would resolve this case differently. The Court thus declines to issue a certificate of appealability. In doing so, the Court notes that Petitioner may not appeal its denial of a certificate, but he may seek a certificate of appealability from the Tenth Circuit.[24]

**IT IS THEREFORE ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED.** The Court also denies Petitioner a COA.

**IT IS SO ORDERED**.

Dated this November day of 1, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[22] Rules Governing Section 2254 Cases, Rule 11(a).

[23] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks and citations omitted).

[24] *See* Rules Governing Section 2254 Cases, Rule 11(a).